**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 98-30997
Summary Calendar

---

ACTION MARINE, INC.,

Plaintiff-Appellee,

VERSUS

NORSEMAN, M/V, ET AL.,

Defendants,

MICHAEL ZAPETIS,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
(96-CV-3945-C)

---

July 15, 1999

Before DAVIS, DUHÉ and PARKER, Circuit Judges.

PER CURIAM:[*]

Appellant Michael Zapetis appeals the district court's judgment awarding *in custodia legis expenses* against him personally. We affirm the judgment of the district court, although we do so on an alternate ground.

Appellee Action Marine, Inc. ("Action Marine") negotiated a towage agreement with Michael Zapetis, President of Norseman Marine

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Towing, Inc. ("Norseman Marine") and director of Gulf & Orient Steamship Line, Inc. ("G&O") for the service of a tug, the M/V NORSEMAN. The NORSEMAN was apparently owned by Norseman Marine and managed by G&O. Pursuant to this agreement between Action Marine and G&O, the NORSEMAN was to tow a barge from Venezuela to the Port of New Orleans. The agreement further provided that Larry Sweeney, Vice-President of Action Marine, and Mr. Zapetis "personally guarantee[d] the terms and conditions of [the] agreement as well as the companies for which" they signed.[2]

After the NORSEMAN failed to complete the voyage within the specified time, Action Marine sued for breach of the agreement. Upon court order, the vessel was arrested by the U.S. Marshal on December 3, 1996. Crew members had also sought the arrest of the vessel for unpaid wages.[3] When the NORSEMAN was arrested, it was at Action Marine's dock in Gretna, Louisiana, and remained there under arrest for 261 days. The value of the NORSEMAN was eventually established by a court-approved appraiser to be $65,000. G&O posted a bond of $65,000 and the vessel was released.

By way of its original and amended complaints, Action Marine sought damages for breach of contract from the NORSEMAN *in rem* and G&O and Mr. Zapetis *in personam*. Action Marine also sought *in custodia legis* expenses for the dockage and maintenance of the NORSEMAN during its seizure. Action Marine did not name Norseman

---

[2] The contract in the record bears only Mr. Sweeney's signature, but Mr. Zapetis does not dispute here that he agreed to the terms of the contract.

[3] The crew members later entered into a settlement agreement with the defendants.

Marine, the purported owner of the vessel, as a defendant. However, Norseman Marine did appear in the action to claim ownership of the vessel.

After a bench trial, the district court first determined that because there was no physical damage to the cargo, Action Marine did not obtain a maritime lien. The court then found in favor of Action Marine on the breach of contract claim and the claim for *in custodia legis* expenses. However, because there was no maritime lien, the court held that recovery could not be had against the NORSEMAN *in rem*, but only against G&O and Mr. Zapetis *in personam*.[4] G&O has not appealed. Mr. Zapetis appeals the award of *in custodia legis* expenses against him personally.

Because we find that a maritime lien existed against the NORSEMAN, we affirm the district court's award of *in custodia legis* expenses on an alternate ground. *See McDonough v. Royal Caribbean Cruises, Ltd.*, 66 F.3d 150, 151 (7th Cir. 1995) ("If the district court's reasoning fails, but another rationale supports the judgment in light of the facts of the case, an appellate court may affirm on the alternate ground."). The district court erred in its determination that Action Marine's claim for breach of the towage contract did not give rise to a maritime lien. *See International Marine Towing, Inc. v. Southern Leasing Partners, Ltd.*, 722 F.2d 126, 130 (5th Cir. 1983); *Rainbow Line, Inc. v. M/V Tequila*, 480

_____

[4] The district court found that the security posted by G&O could be used for *in custodia legis expenses* and "whatever else is owed, flowing from the contract which allowed for recovery of expenses, even though this Court finds no valid maritime lien."

F.2d 1024, 1027 (2d Cir. 1973). As the above cases recognize, breach of a maritime contract gives rise to a maritime lien despite the fact that no damage was sustained to the cargo. *International Marine*, 722 F.2d at 130 (holding that breach of a bareboat charter gives rise to a maritime lien); *Rainbow*, 480 F.2d at 1027 ("The American law is clear that there is a maritime lien for the breach of a charter party."). Therefore, Action Marine's claim for breach of the towage contract in the amount of $20,925 constituted a maritime lien against the vessel.

Because Action Marine asserted a maritime lien against the NORSEMAN, Action Marine is entitled to look to the bond posted by G&O to satisfy the *in custodia legis* expenses. Although the district court awarded Action Marine over $65,000 in *custodia legis* expenses, Action Marine's recovery of these expenses is limited to $65,000 – the amount of the bond as representative of the *res*. The district court did not err in determining that Mr. Zapetis and G&O are jointly liable for $20,925 for breach of the towage contract. Except for the limitation of the recovery of *in custodia legis* expenses stated above, the judgment of the district court is affirmed. The case is remanded to the district court for entry of judgment consistent with this opinion.

AFFIRMED IN PART; MODIFIED IN PART; AND REMANDED.

4